HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOARD OF TRUSTEES OF THE SOUND RETIREMENT TRUST,

   Plaintiff,

   v.

SUMMIT TRADING COMPANY, INC. UBI No. 275005170, et al.,

   Defendants.

CASE NO. C15-361RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant Marilyn J. Carlson's ("Marilyn") Motion to Dismiss. Dkt. # 16. For the reasons set forth below, the Court **DENIES** Marilyn's Motion.

## II. BACKGROUND

Plaintiff is the Board of Trustees of the Sound Retirement Trust (the "Sound Trust") and brings claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Sound Trust is an employee pension benefit plan and multiemployer plan. *See* Compl. ¶ 1. Plaintiff is the plan sponsor of the Trust. *Id.*

Defendant Summit Trading Company, Inc. ("Summit Trading") is a Washington corporation and an employer. *See id.* ¶ 4. Defendant Carlson Diversified, G.P. ("Carlson Diversified") is a Washington general partnership owned by Defendants Gary Carlson

ORDER – 1

("Gary"), Greg B. Carlson ("Greg"), and Marilyn, each of whom are also principals of Summit Trading. *See id.* ¶¶ 6-9.

Plaintiff alleges that prior to September 2013, Summit Trading was required to make employer contributions to both the Sound Trust and the Washington Meat Industry Pension Trust[1] (the "Meat Trust") on behalf of some of its employees pursuant to collective bargaining agreements. *See id.* ¶¶ 15, 28. Although Summit Trading permanently ceased to have an obligation to contribute to either trust in September 2013, it also had a complete withdrawal from the trusts at that time. *See id.* ¶¶ 16-17, 29-30. The Sound Trust determined that Summit Trading owed $1,879,704 for its withdrawal from the Trust and $549,708 for its withdrawal from the Meat Trust. Since September 2013, the Sound Trust has notified Summit Trading of its withdrawal liability assessments for both trusts and demanded payment. *See id.* ¶¶ 18-23, 32-36. Furthermore, Plaintiff alleges that Carlson Diversified, Gary, Greg, and Marilyn are also jointly and severally liable for this withdrawal liability because they are in the same control group as Summit Trading. *See id.* ¶¶ 40-43.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the

---

[1] The Meat Trust was a separate trust fund until July 1, 2014 when it was merged into the Sound Trust. *See* Compl. ¶¶ 2-3.

ORDER – 2

complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. ANALYSIS

Marilyn argues that the Complaint does not allege sufficient facts to support a control group theory against her. *See* Dkt. # 16 at 4-6. Essentially, Marilyn argues that because Plaintiff does not allege that she provided personal services to Carlson Diversified, Plaintiff's claims against Marilyn must be dismissed.

ERISA permits "plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans." *Carpenters Pension Trust Fund for N. Cal. v. Underground Constr. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994). ERISA's definition of "employer" includes other "trades and businesses" that are under "common control" along with the entity making contributions to the pension plan. *See* 29 U.S.C. § 1301(b)(1); *Brentwood Fin. Corp. v. W. Conference of Teamsters Pension Trust Fund,* 902 F.2d 1456, 1458 n.2 (9th Cir. 1990). Generally speaking, each member of a control group is jointly and severally liable for withdrawal liability generated by any member's activities. *See Bd. of Trustees of W. Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988); *see also I.A.M. Nat'l Pension Fund v. TMR Realty Co., Inc.*, 431 F. Supp. 2d 1, 11 (D.D.C. 2006) (noting that "[e]ach member of the control group is joint and severally liable for the purposes of withdrawal liability pursuant to [29 U.S.C. § 1301(b)(1)]").

Marilyn bases her argument on language from 29 U.S.C. § 1301(b)(1), which states that "[a]n individual who owns the entire interest in an unincorporated trade or

ORDER – 3

business is treated as his own employer, and *a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of Title 26.*" *Id.* (emphasis added). Marilyn reads the second sentence to mean that in order for her to be liable for the withdrawal liability of Carlson Diversified, she must be an employee within the meaning of 26 U.S.C. § 401(c)(1). Under that provision, partners may be considered employees of the partnership if they earn income from "a trade or business in which personal services of the taxpayer are a material income-producing factor." *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 14 (2004) (quoting 26 U.S.C. § 401(c)(1) & (2)(A)(i)). In short, Marilyn argues that for her to be jointly and severally liable for withdrawal liability incurred by Carlson Diversified, she must have been an "active" partner in Carlson Diversified, rather than simply a "passive" general partner.

The Court rejects Marilyn's argument. Marilyn has not pointed to any authority imposing such a requirement that a general partner is individually liable for the withdrawal liability of a partnership only if she may also be classified as an employee under the Internal Revenue Code. To the contrary, the Ninth Circuit has clearly held that individual partner liability for withdrawal liability incurred by the partnership is governed by common law concerns. *See Bd. of Trustees of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1014-15 (9th Cir. 1987). Accordingly, "[a]bsent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership." *Id.* at 1015 (citing Unif. P'ship Act § 17 (Unif. Law Comm'n 1914)). This liability extends to individual partners, seemingly regardless of whether they are "employees" within the meaning of 26 U.S.C. § 401(c)(1). *See id.* (holding that the individual partners were personally liable for the general partnership's withdrawal liability under 29 U.S.C. § 1301, subject to the exemptions in 29 U.S.C. § 1405(c)); *see also Underground Constr.*, 31 F.3d at 779 (explaining *Johnson*'s holding as rendering individuals liable under ordinary partnership liability principles for a valid

ORDER – 4

withdrawal assessment against a joint venture).  The principle that general partners may be individually liable for withdrawal liability is well established.  *See Teamsters Pension Trust Fund of Phila. & Vicinity v. Domenic Cristinzio, Inc.*, 994 F. Supp. 617, 624 (E.D. Pa. 1998) (collecting cases); *I.L.G.W.U. Nat'l Retirement Fund v. Vaco Holding Co.*, 950 F. Supp. 598, 603 (S.D.N.Y. 1997) ("The withdrawal liability imposed on Vaco may extend to its general partners, Vitale and Cohen"); *see also Trustees of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020, 1024 (3d Cir. 1988) (holding that "personal assets of an individual which are not exempt under the Bankruptcy Code may be used to satisfy a sole proprietor's withdrawal liability.").

In short, Marilyn's theory reads too much into the statutory language and ignores Plaintiff's theory of liability.  Plaintiff has sufficiently pleaded that Summit Trading and Carlson Diversified have common ownership and are in the same controlled group.  *See* Compl. ¶¶ 39-43.  Furthermore, Plaintiff has alleged that Marilyn is a general partner of Carlson Diversified.  *See id.* ¶¶ 6, 9.  Consequently, Plaintiff has sufficiently alleged a theory of liability against Marilyn.  There is no requirement that Marilyn provide personal services to Carlson Diversified to be liable as a general partner for its withdrawal liability.

Finally, assuming that Marilyn is arguing that she is not individually liable as an "employer" because she is merely a passive investor and not a "trade or business" (an argument that ignores the actual basis for her liability), the Ninth Circuit has clearly held that "the statute does not distinguish between active and passive investments."  *Lafrenz*, 837 F.2d at 894; *contra Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 854, 868 (E.D. Mich. 2010) (noting that "many courts agree that an entity does not normally conduct a trade or business with sufficient continuity and regularity . . . if it merely holds a passive investment interest in some property.").

ORDER – 5

## V.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Marilyn Carlson's Motion to Dismiss. Dkt. # 16.  The basis for Marilyn's liability, if any, in this case stems not just from her alleged membership in the control group, but also from her individual liability for Carlson Diversified's liabilities as a general partner.  Those facts are sufficiently alleged.  Beyond simply misreading the statute, Marilyn has not pointed to any authority distinguishing between "passive" and "active" general partners for purposes of withdrawal liability.  If Marilyn had been concerned about such potential liability, she could have structured Carlson Diversified in a different manner.

DATED this 29th day of February, 2016.

The Honorable Richard A. Jones
United States District Court

ORDER – 6